IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ROBBIE L. COOPER**                                                                                   **PLAINTIFF**

V.                                                          CIVIL ACTION NO. 3:20CV660 HTW-LGI

**KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL SECURITY**                                        **DEFENDANT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

    Robbie Cooper appeals the final decision denying her application for Supplemental Security Income (SSI) on substantive and procedural grounds. The Commissioner moves to dismiss the procedural claim and requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the entire record, including the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

    On March 27, 2018, Plaintiff filed an SSI application alleging a disability onset date of May 1, 2017, due to carpel tunnel, gout, bipolar disorder, depression, schizophrenia, gangrene, arthritis, and problems with her back, leg, wrist and arm. She was 40 years old on her alleged onset date, with no past relevant work. Following agency denials of her application, an Administrative Law Judge ("ALJ"), under the authority of then-Acting Commissioner, Andrew Saul,[1] rendered an unfavorable decision finding that

---

[1] Kilolo Kijakazi was named as the new Acting Commissioner of Social Security on July 9, 2021.

she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

The evidence is detailed in the memorandum briefs and the ALJ's decision, and thus, will not be repeated in depth here. Plaintiff, who alleges disability due to physical and mental impairments, testified at the administrative hearing that she has applied for work at her local unemployment office since filing her disability application but was not hired because of her physical impairments. Notwithstanding, Plaintiff recently completed a women's job program and is currently pursuing a GED, though she sometimes has difficulty completing assignments because of anxiety. Plaintiff also reported problems with her memory, maintaining attention for long periods of time, mood swings, difficulty adapting to changes in her routine, and panic attacks when she is stressed or upset. Though Plaintiff maintained that her problems have not improved, she acknowledged that therapy and medication have helped, causing her to reduce her daily marijuana usage in favor of medication. She also acknowledged that she is able to attend to her personal needs, care for her 11-year-old daughter, and can get along with others, though she would prefer to avoid people.

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. At steps two and

---

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

three, the ALJ found that although Plaintiff's major depressive disorder, bipolar I disorder, with psychotic features; post-traumatic stress disorder with panic attacks, excoriation disorder, and moderate cannabis use disorder were medically severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> She is limited to simple, routine, repetitive tasks of unskilled work; work instructions must be in either oral form or by demonstration; the instructions themselves, can be simple to detailed but uninvolved, meaning at a reasoning level of not more than a 2, per the SCO. She is limited to never handling or exchanging money. She can maintain attention/ concentration for no longer than two-hour blocks; can occasionally interact with supervisors, co-workers, and the general public. She is limited to a low stress work environment, meaning no fast-paced production requirements and only simple work-related decisions, with few or no changes in the work setting.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she is able to perform work as a housekeeping cleaner, laundry worker, and price marker.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency

> factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). On judicial review, this Court may not re-weigh the evidence, try the case *de novo,* or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff assigns two errors on appeal: (1) the ALJ's residual functional capacity determination is not substantially supported by the evidence because the ALJ failed to properly evaluate the consulting psychiatrist's opinion, and (2) the final decision is constitutionally defective because the ALJ who adjudicated her claim served under authority delegated from a Commissioner who enjoyed unconstitutional removal protection. These arguments are unavailing.

### 1.

As a threshold matter, an ALJ's residual functional capacity determination is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is not a

4

medical opinion, but an administrative finding of fact. Social Security Ruling 96–8p, *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) n. 4). The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations in the residual functional capacity determination that he did not find to be supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). In making this assessment, the opinions of treating physicians have historically been assigned controlling weight, though ALJs have always been free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017); *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015); 40 C.F.R. § 404.1527.[3] In recent years, social security regulations have been revised so that no specific evidentiary weight, including controlling weight, is to be given to medical opinions from treating sources. 20 C.F.R. § 404.1520(c) (2019). Under the new regulations, supportability and consistency of medical opinions are the most important factors, and ALJs may, but are no longer required to, explain how they considered other factors. *Id.* But an ALJ remains free to assign little or no weight to the opinion of any physician when the physician's statements are brief and conclusory, are not supported by medically acceptable clinical laboratory diagnostic techniques or are otherwise

---

[3] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. For claims filed on that date and thereafter, 20 C.F.R. § 404.1520c applies, and it provides, *inter alia*, that no specific evidentiary weight is to be given to medical opinions from medical sources.

unsupported by the evidence. *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014) (citations omitted).

Relevant here, Plaintiff alleges that she was prejudiced by the ALJ's failure to find the degree of limitations assigned by consulting psychiatrist, Dr. Helen Jackson, persuasive. Specifically, Plaintiff claims the ALJ "cherry picked" evidence to support his position while ignoring evidence supporting Dr. Jackson's opinion. As Plaintiff sees it, the ALJ not only merely gave "lip service" to the supportability and consistency requirements of the regulations but failed to build a "logical bridge" between the evidence and his conclusion by explaining precisely how Dr. Jackson's opinion was inconsistent with the other evidence of record. A neutral reading of the ALJ's decision belies these claims.

As set forth below, the ALJ closely compared Dr. Jackson's conclusions with Plaintiff's mental health history and treatment as a whole, explaining as follows:

> As for the opinion from the consultative psychological examiner, Helen Jackson, Psy.D., in July of 2018, the undersigned finds the opinion to be generally unpersuasive. For example, Dr. Jackson opined that the claimant was significantly limited in her ability to perform routine, repetitive tasks and tolerate mild to moderate stress; frequently needs assistance due to chronic pain and anxiety; concentration, attention and memory appear to be variably impaired, likely causing limitations in following directions, and she would likely have variable problems interacting with others, such as supervisors and coworkers. While there is some support for this opinion in the claimant's presentation during the examination, ***it is rather inconsistent with the longitudinal medical evidence of record***, ***which reveals improvement with medications and mental status examinations with generally intact concentration and memory.*** Furthermore, her limitations are phrased in somewhat vague terms, instead of in vocationally relevant limitations, and she appears to have relied on the claimant's subjective complaints, rather than on her objective findings, as she reports the claimant admits to isolating socially, suffering severe mood swings, and

>frequent verbal outbursts in the formulation of her opinion. For example, although the claimant did have poor to fair attention span and required questions repeated several times [during the consultative examination], the claimant was still able to persist through the examination, and was able to spell "world" correctly, perform simple calculations, abstract, and was estimated to have average intellectual activity, indicating she was able to perform at least some simple tasks.  Likewise, ***inconsistent with significant limitations to perform routine and repetitive tasks and supportive of at least unskilled work and ability to complete at least some tasks, the claimant reported completing a woman's job corp. program, attending GED classes, occasionally driving, grocery shopping, and reported that she enjoyed reading.***  Therefore, the undersigned finds the opinion to be generally unpersuasive.[4]

Plaintiff objects to the ALJ's persuasiveness finding but she does not directly address the evidence relied upon by the ALJ.  Instead, she points to the attention and memory deficits she exhibited during Dr. Jackson's consultative examination, and the instances of record documenting her complaints of depression to support her claim that the ALJ ignored favorable evidence in assessing Dr. Jackson's opinion. However, Plaintiff's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *5 (N.D. Tex. July 9, 2021).

In evaluating the opinion evidence, the ALJ acknowledged that Plaintiff exhibited attention and memory deficits during Dr. Jackson's examination but correctly noted that they were inconsistent with her longitudinal treatment history showing "generally intact concentration and memory."  In addition, the undersigned finds it notable that the record reflects that Plaintiff's mental health treatment consisted of roughly ten visits over a

---

[4] Emphasis added.

three-year period, and that the subjective reports she contends the ALJ ignored are largely found in her initial intake psychiatric assessments *before* a treatment plan was implemented—a plan that required Plaintiff to reduce her marijuana usage from "daily to no more than once a week," and to "adhere to [her] prescribed medication regimen for consecutive three months with no misses." Follow-up therapy sessions confirm that her symptoms improved with treatment and that her mental status examinations were routinely within normal limits, both of which were identified by the ALJ as reasons for discounting the degree of limitation assigned by Dr. Jackson. And though Plaintiff did report increased anxiety/panic symptoms in the last psychiatric treatment of record, the examiner notes that Plaintiff "attributes this to the recent Christmas holiday season" and the anniversary of the death of family members. Notwithstanding, she was continuing to work towards obtaining her GED, with the hopes of graduating in May of that year. Such evidence substantially supports the ALJ's finding that the reports of increased depression were generally attributable to situational stressors. Plaintiff's mental health impairments were otherwise generally well-controlled with consistent medication and therapy, and well-accommodated by a residual functional capacity limiting her to simple, repetitive, low-stress, unskilled work with occasional interaction with others. This finding is consistent with the opinions of state agency psychological consultants which the ALJ found to be more persuasive, and Plaintiff's daily activities as set forth herein.

In sum, the issue is not whether Plaintiff's treatment history shows ongoing depressive episodes for which she needs therapy and medication, but whether substantial evidence supports a finding that she can perform work within the limits of her residual

functional capacity as determined by the ALJ. *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (distinguishing between diagnosed impairments and functional limitations caused by those impairments). The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. *See Muse*, 925 F.2d at 790. And, while "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence or his or her claimed medical conditions," or cherry-pick evidence to support a preferred conclusion, that is not what occurred here. *Williams v. Astrue*, 355 F. App'x 828, 832, n.6 (5th Cir. 2009) (unpub.) (citing *Ripley v. Chater*, 67 F.3d 552, 552, 557 (5th Cir. 1995). In the end, Plaintiff's first assignment of error "comes down to the weight the ALJ places on [Dr. Jackson's opinion]—and it is the ALJ's task, not ours, to weigh evidence." *Garcia*, 622 F. App'x at 408–409 (unpublished). Substantial evidence supports the ALJ's finding that Dr. Jackson's opinion was not sufficiently persuasive enough to find Plaintiff as limited to the degree opined. This assignment of error is without merit.

2.

Having concluded that the ALJ's decision is substantially supported on the merits, the undersigned turns briefly to Plaintiff's second point of error—that the Social Security Act's restriction on the President's authority to remove the Commissioner deprived her of a valid administrative adjudicatory process. Plaintiff relies on the United States Supreme Court's decision in *Seila Law LLC v. Consumer Fin. Protection Bureau*, 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020), which held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, allowing for the CFPB director to be removed by the

President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id.* at 2197. Because 2 U.S.C. § 902(a)(3), the statute governing the removal of the Commissioner of the Social Security Administration contains a similar restriction on the President's ability to remove the Commissioner except for cause, Plaintiff contends that § 902(a)(3)[5] is similarly unconstitutional, rendering the ALJ's decision in her case invalid. Consequently, Plaintiff submits that she is entitled to a new hearing "with a constitutionally appointed ALJ."

However, the Supreme Court subsequently rejected Plaintiff's position in *Collins v. Yellen*, 210 L. Ed. 2d 432, 141 S. Ct. 1761, 1789 (2021), finding, *inter alia*, that an unconstitutional removal provision does not automatically void every action of every agency. Indeed, a plaintiff must do more than point to a conflict between the removal statute and the Constitution; she **must show** some action on the part of the commissioner or agency director that was harmful to her. *See Collins*, 141 S. Ct. at 1790–91 (Thomas, J., concurring). Plaintiff has made no such showing here. She has established no link

---

[5] Specifically, § 902(a)(3) provides:

> The Commissioner shall be appointed for a term of 6 years, except that the initial term of office for Commissioner shall terminate January 19, 2001. In any case in which a successor does not take office at the end of a Commissioner's term of office, such Commissioner may continue in office until the entry upon office of such a successor. A Commissioner appointed to a term of office after the commencement of such term may serve under such appointment only for the remainder of such term. An individual serving in the office of Commissioner *may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office.*

42 U.S.C. § 902(a)(3) (emphasis added).

between the ALJ's decision denying benefits in her specific case and the allegedly unconstitutional removal provisions in § 902(a)(3).  As Justice Kagan observed in *Collins*:

> Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so, a betting person might wager that the agency's removal provision is next on the chopping block [post *Seila*]. . . . But  . . .  I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense. [P]residential control [does] not show itself in all, or even all important, regulation. When an agency decision would not capture a President's attention, his removal authority could not make a difference . . . .

*Id.* at 1802 (Kagan, J. concurring) (internal citations and quotations omitted).  Applying *Collins*, courts in the Fifth Circuit and across the country have likewise rejected this argument, finding that an unconstitutional removal clause does not deprive the ALJ and the Appeals Council of the power to determine Social Security disability claims. *See Young v. Kijakazi*, No. 3:21-CV-139-FKB, 2022 WL 16727183, at *4–5 (S.D. Miss. Sept. 7, 2022); *Smith v. Kijakazi*, No. CV 21-1240, 2022 WL 2980905 (E.D. La. July 11, 2022), *report and recommendation adopted,* No. CV 21-1240, 2022 WL 2967470 (E.D. La. July 27, 2022); *see also B. v. Pamela Joyce B. v. Kijakazi*, No. 1:21-CV-00087-H-BU, 2022 WL 3161941, at *9 (N.D. Tex. July 21, 2022), *report and recommendation adopted sub nom. Pamela B. v. Kijakazi*, No. 1:21-CV-087-H-BU, 2022 WL 3159273 (N.D. Tex. Aug. 8, 2022)(describing the argument as "legally frivolous"); *Hughes v. Kijakazi*, No. CV 20-2374, 2022 WL 1256704 (E.D. La. Mar. 9, 2022), *report and recommendation adopted,* No. CV 20-2374, 2022 WL 1238628 (E.D. La. Apr. 26, 2022). *See also Bryan L. v. Comm'r of Soc. Sec.*, No. 2:21-CV-2835, 2022 WL 537577 (S.D.

Ohio Feb. 23, 2022), *report and recommendation adopted,* No. 2:21-CV-2835, 2022 WL 4368315 (S.D. Ohio Sept. 21, 2022), at *6 (collecting cases).

Because Plaintiff fails to establish a connection between the denial of her benefits claim and the purportedly unconstitutional removal provision of 2 U.S.C. § 902(a)(3), no remand is warranted on this issue and the Commissioner's motion to dismiss on this basis should be granted to the extent it is consistent with the findings herein.

## Conclusion

For the foregoing reasons, it is recommended that Plaintiff's appeal be dismissed and the Commissioner's request for an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge be granted.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended,

effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on January 6, 2023.

    /s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE